NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LUIS GERMAN JUAREZ, *Appellant*.

No. 1 CA-CR 21-0522
FILED 9-20-2022

Appeal from the Superior Court in Yuma County
No. S1400CR201800936
The Honorable Roger A. Nelson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Deborah Celeste Kinney
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

¶1        Luis German Juarez appeals his convictions and sentences for aggravated assault and assisting a criminal street gang. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Three officers with the Yuma Police Department were dispatched to a site of reported graffiti in "Okie Town" gang territory. There, the officers found graffiti signifying the "Southside Y Town" gang—an Okie Town rival—that was crossed out with fresh Okie Town graffiti placed beside it. As they were processing the scene, the officers heard "whistling" and spotted two men—Kane Perez and defendant Juarez—approaching them from about 50 yards away. The men were shouting "Okie Town" and making gang signs with their hands. Two of the officers began walking toward the men when Perez pulled out a handgun and began shooting. The officers returned fire, and Perez and Juarez ran down an alleyway where an officer saw Juarez boosting Perez over a residential wall. Juarez was apprehended after he emerged from the yard of the residence. Perez was later located in the same yard with a gunshot wound.

¶3        The State tried Juarez on three counts each of attempted first-degree murder, assisting a criminal street gang by attempting first-degree murder, aggravated assault, and assisting a criminal street gang by committing aggravated assault. A jury found him guilty of two counts of aggravated assault and two counts of assisting a criminal street gang by committing aggravated assault. The jury also found Juarez was on release in another case when he committed the crimes, the gang offenses were dangerous, and he committed the assaults with the intent to promote, further, or assist a criminal street gang. The jury found him not guilty of the other eight charges.

¶4          The trial court sentenced Juarez under A.R.S. § 13-704 to concurrent prison terms of 17.5 years for each aggravated assault and 14.5 years for each conviction of assisting a criminal street gang. Each sentence reflected an increase over the presumptive term by seven years—two for committing the offenses while on release, A.R.S. § 13-708(D), plus five for intending to promote, further, or assist a criminal street gang, A.R.S. § 13-714.

¶5          Juarez appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I.     *Admission of Facebook Evidence*

¶6          The State's case against Juarez required proof that he was Perez's accomplice and that they were associated with Okie Town. To that end, the State offered evidence from Perez's Facebook account that included messages he purportedly exchanged with Juarez. The correspondence included references to their affiliation with Okie Town, discussions about going after Okie Town rivals, and photographs indicating gang membership. The State did not obtain evidence directly from Juarez's Facebook account, which was deleted before trial.

¶7          Juarez sought to preclude the Facebook evidence, arguing the State could not adequately show he authored the correspondence. The trial court admitted the messages over his objection. Juarez argues on appeal that the messages were not sufficiently authenticated and therefore violated the rule against hearsay. We review the trial court's admission of evidence for an abuse of discretion. *State v. Fell*, 242 Ariz. 134, 136, ¶ 5 (App. 2017).

¶8          A Facebook message made by and offered against a defendant at the defendant's trial must be authenticated to be admissible under the hearsay rule. *State v. Griffith*, 247 Ariz. 361, 365, ¶ 14 (App. 2019) (citing Ariz. R. Evid. 801(d)(2)). Authentication requires the proponent to "produce evidence sufficient to support a [jury] finding that the item is what the proponent claims it is"—as applicable here, messages sent by Juarez. Ariz. R. Evid. 901(a); *Griffith*, 247 Ariz. at 365, ¶ 14. "If that standard is met, any uncertainty goes to the weight rather than the admissibility of the evidence." *Fell*, 242 Ariz. at 136, ¶ 6.

¶9          The trial court did not abuse its discretion by admitting the Facebook messages because the record contains "reasonable extrinsic

evidence tend[ing] to show" Juarez made and received them. *Griffith*, 247 Ariz. at 365, ¶ 15. Whether authentication is sufficient turns on the particular facts of the case. *Fell*, 242 Ariz. at 136, ¶ 7. The record here contains facts similar to other cases in which sufficient authentication was found. An officer testified he obtained the messages by executing a search warrant through a Facebook portal specifically designed for law enforcement use. *See Griffith*, 247 Ariz. at 365–66, ¶ 16. The Facebook account that sent and received the messages was in Juarez's name and showed his image as the profile photo. *Id.* at 365, ¶ 16. No evidence suggested another person made or used the account. *See Fell*, 242 Ariz. at 137, ¶ 11. In addition, the messages themselves contained indicia they came from Juarez. *See id.* at 138, ¶ 13. In one, Juarez sends a photo that includes his own image. *Id.* In another, Juarez apparently identifies himself in an image Perez sends him. Furthermore, the messages show a consistency of tone, content, and style throughout that reflect an exchange between the same two people. *Id.* This record shows sufficient evidence of authentication. Any dispute over authorship went to weight, not admissibility. *Id.* at ¶ 15.

## II.   Double Jeopardy

**¶10**      Juarez argues his sentences placed him in double jeopardy. He contends that applying the gang sentencing enhancement to his conviction of assisting a criminal street gang punished him twice for the same offense. And he contends that his convictions for aggravated assault and assisting a criminal street gang amounted to convictions of both greater and lesser-included offenses.

**¶11**      The double jeopardy clause of the federal and Arizona constitutions protects against a second prosecution for the same offense after a conviction or acquittal and against multiple punishments for the same offense. U.S. Const. amend. V; Ariz. Const. art. 2, § 10. Juarez's claims all allege multiple punishments for the same offense.

**¶12**      "A double jeopardy violation is fundamental error." *State v. Cope*, 241 Ariz. 323, 325, ¶ 5. (App. 2016). We review such claims de novo. *State v. Carter*, 249 Ariz. 312, 315, ¶ 7 (2020).

### a.   Gang Enhancement Applied to Substantive Gang Offense

**¶13**      The jury found Juarez guilty of two counts of assisting a criminal street gang, which required finding he "committ[ed] any felony offense, whether completed or preparatory for the benefit of, at the direction of or in association with any criminal street gang." A.R.S.

§ 13-2321(B). The trial court increased each of Juarez's sentences for those convictions by five years under A.R.S. § 13-714, which applies to "[a] person who is convicted of committing any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang."

¶14 A claim that the defendant received multiple punishments for the same offense is analyzed under *Blockburger*'s same-elements test, which considers "whether each provision requires proof of a fact which the other does not." *Carter*, 249 Ariz. at 315, ¶ 9 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see also Cope*, 241 Ariz. at 325, ¶ 8 ("[I]n order to avoid double jeopardy, it must be possible to violate one statute without violating the other.").

¶15 Juarez contends that applying the § 13-714 gang enhancement to his convictions of assisting a gang under § 13-2321(B) placed him in double jeopardy because both statutes contain the same elements. As he recognizes, his argument conflicts with our decision in *State v. Harm*, 236 Ariz. 402 (App. 2015). There, the defendant was acquitted of assisting a criminal street gang under § 13-2321(B) but found to have committed a felony with the intent to promote a street gang under § 13-714. *Id.* at 404, ¶ 1. The defendant argued that applying the § 13-714 enhancement given his acquittal of the substantive gang offense led to double jeopardy. *Id.* at ¶ 2. We rejected his double jeopardy claim after determining that "neither the words contained in [§ 13-714 and § 13-2321(B)], nor their application, is identical." *Id.* at 407, ¶ 18. In other words, a person could satisfy the elements of the § 13-714 enhancement without necessarily assisting a criminal street gang under § 13-2321(B). *Id.* We also noted that, independent of the same-elements analysis, an established line of authority holds that sentence enhancements generally do not implicate double jeopardy. *Id.* at 408–09, ¶ 23; *see also State v. Lee*, 189 Ariz. 608, 620 (1997) ("The legislature may establish a sentencing scheme in which an element of a crime could also be used for enhancement and aggravation purposes.").

¶16 We continue to adhere to *Harm* and conclude that applying the § 13-714 gang enhancement to Juarez's sentence for assisting a gang under § 13-2321(B) does not violate double jeopardy.

b. *Assisting a Criminal Street Gang as Lesser-included Offense of Aggravated Assault with Intent to Promote Gang*

¶17 The constitutional protection against multiple punishments for the same offense also applies to punishments for both a lesser-included and greater offense. *Cope*, 241 Ariz. at 324–25, ¶ 5; *see also Carter*, 249 Ariz.

at 314, ¶ 1. "An offense is 'lesser included' when the 'greater offense cannot be committed without necessarily committing the lesser offense.'" *Carter*, 249 Ariz. at 316, ¶ 10 (citation and internal quotation marks omitted). To determine whether double jeopardy is offended by conviction of greater and lesser-included crimes, we compare the elements of each statute. *Id.* at 315–16, ¶ 9.

**¶18**        Juarez contends that his conviction of aggravated assault, as enhanced by the jury's § 13-714 gang finding, necessarily encompassed his conviction of assisting a criminal street gang under § 13-2321(B). This claim is substantively identical to the previously addressed claim and likewise fails under *Harm*. Because one can commit aggravated assault with the "intent to promote, further or assist any criminal conduct by a criminal street gang" without necessarily committing a felony offense "at the direction of or in association with any criminal street gang," Juarez's guilt of the former offense did not necessarily encompass guilt of the latter. *Harm*, 236 Ariz. at 407, ¶ 18.

        *c.*        *Aggravated Assault as Lesser-included Offense of Assisting a Criminal Street Gang*

**¶19**        The crime of assisting a criminal street gang requires the commission of a predicate felony. A.R.S. § 13-2321(B) ("A person commits assisting a criminal street gang by committing any felony offense . . . at the direction of or in association with any criminal street gang."). Juarez contends that his separate convictions for assisting a gang by committing aggravated assault and the underlying aggravated assault placed him in double jeopardy because one cannot commit the former without necessarily committing the latter.

**¶20**        While convictions of an offense requiring a predicate felony and the underlying felony can implicate double jeopardy in *successive* trials, *see Harris v. Oklahoma*, 433 U.S. 682 (1977), the same principle does not apply to convictions obtained in the *same* trial, *see State v. Girdler*, 138 Ariz. 482, 489 (1983) (emphasis added). This distinction reflects the diverse interests served by different applications of the double jeopardy clause. "In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, the question "whether punishments are 'multiple'" for double jeopardy purposes, "is essentially one of legislative intent." *Id.* Here, the legislature's express incorporation of a predicate

felony requirement in § 13-2321(B) shows an intent to permit multiple punishments. *See State v. Siddle*, 202 Ariz. 512, 517, ¶ 14 (App. 2002). That expression of intent disposes of Juarez's double jeopardy claim. *See Johnson*, 467 U.S. at 499 n.8 ("Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end.").

## CONCLUSION

¶21      We affirm Juarez's convictions and sentences.

