NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH A. MERIWETHER, *Appellant.*

No. 1 CA-CR 22-0168
FILED 2-14-2023

---

Appeal from the Superior Court in Yuma County
No. S1400CR202100467
The Honorable Brandon S. Kinsey, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Joseph A. Meriwether appeals his conviction and sentence for promoting prison contraband. For the following reasons, we affirm.

### BACKGROUND

¶2        Meriwether, an inmate in the Arizona Department of Corrections ("DOC"), received a prison-authorized knee brace. Over three months later, a corrections officer saw Meriwether tapping on his cell window with two sharpened metal objects. Meriwether appeared agitated and told the officer, "If you don't get me a supervisor, then you or somebody is going to get this."

¶3        The officer called for assistance, and backup officers initiated a strip search of Meriwether. During that search, Meriwether refused to remove his knee brace. He eventually agreed, but instead of removing the entire knee brace, he detached two metal components or "stays" from the brace and placed them on the floor. The "stays" had been sharpened to points and matched the description of the objects Meriwether used to tap on his cell window. Multiple officers identified the objects as "shanks" or makeshift weapons, which constitute prison contraband.

¶4        Meriwether denied possessing any weapons, claiming he tapped on his cell window with "a black piece of paper or magazine." Officers searched his cell, but did not locate either a black piece of paper or a magazine.

¶5        Meriwether had the knee brace for several months before the incident, and an investigator later confirmed that prison policy prohibited inmates from receiving used medical equipment. As observed by officers and depicted in photographs of the knee brace, the sharpened portion of the "stays" protruded from its neoprene sleeve and would have been apparent to anyone wearing the brace.

**¶6**         The State charged Meriwether with one count of promoting prison contraband, a class two felony, and two counts of aggravated assault, class three and five felonies. During a three-day jury trial, the superior court denied Meriwether's motion for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20 on the promoting prison contraband offense but granted the motion on the remaining offenses. The jury returned a guilty verdict on the promoting prison contraband offense. Meriwether admitted to two aggravating factors, and the court sentenced him to the presumptive term of five years' imprisonment. Meriwether timely appealed.

## DISCUSSION

### I.    Juror Rehabilitation

**¶7**         On appeal, Meriwether argues the superior court improperly rehabilitated a prospective juror. Specifically, he claims recent amendments to Rules 18.4 and 18.5 eliminating peremptory challenges prevented him from curing the court's alleged overreach, and the comment to the amended Rule 18.5 cautions courts from using leading questions during voir dire. We will not disturb the court's ruling on the scope of voir dire absent an abuse of discretion. *State v. Melendez*, 121 Ariz. 1, 3 (1978). We review interpretations of court rules de novo. *State v. Fitzgerald*, 232 Ariz. 208, 210, ¶ 10 (2013).

**¶8**         Under Rule 18.5(f), the superior court "must conduct a thorough oral examination of the prospective jurors and control the voir dire examination." Ariz. R. Crim. P. 18.5(f). And, as required by Rule 18.4(b), the court must excuse a juror for cause "if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b); *see also* Ariz. Const. art. II, § 24 (establishing a criminal defendant's right to an impartial jury). The court must elicit information from prospective jurors to determine whether there are grounds to challenge the juror for cause. *See State v. Rose*, 121 Ariz. 131, 139–40 (1978). In doing so, the court may "rehabilitate a challenged juror through follow-up questions to assure the court that [s]he can sit as a fair and impartial juror." *State v. Martinez*, 196 Ariz. 451, 459, ¶ 28 (2000). The court's questions may target whether the juror can set aside personal beliefs and weigh the evidence as instructed by the court and required by law. *See id.*

**¶9**         As of January 1, 2022, the Arizona Supreme Court amended Rules 18.4 and 18.5 to eliminate the use of peremptory challenges by the

parties during voir dire. Ariz. S. Ct. Order No. R-21-0020 (Aug. 30, 2021). The comment to amended Rule 18.5(f) advises the superior court to "use open-ended questions that elicit prospective jurors' views narratively," adding that the court "should refrain from attempting to rehabilitate prospective jurors by asking leading, conclusory questions that encourage prospective jurors to affirm that they can set aside their opinions and neutrally apply the law." Ariz. R. Crim. P. 18.5(f), cmt. to 2022 amendment. The recent amendments and comment in no way prohibit courts from rehabilitating jurors by explaining the law and asking open-ended questions regarding their ability to remain fair and impartial.

¶10        Here, prospective jurors completed written questionnaires before the trial began. In response to that questionnaire, Juror 67 stated that evidence related to the reason for Meriwether's imprisonment could help explain why he committed the offenses. During individual voir dire, Juror 67 avowed that she would not speculate about why Meriwether was imprisoned, she understood the State's burden of proof, and she could base her decision solely on the evidence. She noted, however, that the information might help understand Meriwether's character and assist her in determining guilt. Juror 67 added that Meriwether's failure to present any evidence might "affect [her] a little bit." When Juror 67 expressed these concerns, the superior court briefly explained the State's burden of proof, the presumption of innocence, and a defendant's right not to present evidence. Following this explanation of the law, Juror 67 confirmed that she understood these principles and could follow the law.

¶11        Meriwether moved to strike Juror 67 for cause, arguing her responses suggested that she could not hold the State to its burden. He also argued that the superior court's rehabilitation of Juror 67 ran afoul of Rule 18.5(f), claiming the juror may have felt pressured by the court's leading questions. The State argued the court explained the law, and the juror demonstrated that she could follow that law. The court denied Meriwether's motion but allowed the parties to conduct additional questioning. In both individual and group voir dire, Juror 67 avowed that she would not "prejudge" Meriwether and would instead apply the law as instructed. The court passed the jury panel for cause, including Juror 67.

¶12        On this record, we find no abuse of discretion. The superior court's rehabilitation of Juror 67 comported with the text of amended Rules 18.4 and 18.5, as well as the guidance provided in the comment to Rule 18.4(f). The court had the duty to determine whether Juror 67 could be fair and impartial. In doing so, the court provided an explanation of the law and confirmed that the juror could follow the law as instructed. The court's

questions did not, as Meriwether contends, pressure the juror into feigning impartiality. Without encouraging Juror 67 to affirm her ability to remain impartial, the court clarified the law and asked open-ended questions to determine whether she understood those legal principles and whether she could apply those principles when deciding this case. The court's follow-up questions in voir dire in no way constituted overreach. *See Martinez*, 196 Ariz. at 459, ¶ 28.

¶13    Although the superior court heeded the cautionary language in the comment to Rule 18.4(f), we note that the comment does not create a mandate, and nothing in the rule itself restricts the court from asking follow-up questions during voir dire. *See* Ariz. R. Crim. P. 18.4(f); *see also State v. Aguilar*, 209 Ariz. 40, 48, ¶ 26 (2004) ("Although a comment may clarify a rule's ambiguous language, a comment cannot otherwise alter the clear text of a rule."). In addition, Meriwether's assertion that the recent amendments to Rules 18.4 and 18.5 require us to rewrite decades of legal precedent also fails. The elimination of peremptory challenges did not impact the substantive nature of the court's role during voir dire. *See* Ariz. R. Crim. P. 18.4(b), 18.5(f). Even so, such a question would not be for this court to decide. *See State v. Eichorn*, 143 Ariz. 609, 613 (App. 1984) ("Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court."); *Kilberg v. State*, 14 Ariz. App. 421, 422 (1971) ("It is for the Supreme Court of this State to change the rule if change there should be.").

## II.    Prison Database Records

¶14    Meriwether next argues the superior court abused its discretion by admitting prison database records under the business records exception to the rule against hearsay. Whether business records are sufficiently reliable to satisfy the hearsay exception is left to the court's sound discretion. *Larsen v. Decker*, 196 Ariz. 239, 243, ¶ 19 (App. 2000).

¶15    An out-of-court statement offered for its truth is subject to the rule against hearsay. Ariz. R. Evid. 801(c), 802. However, under the business records exception, "records of a regularly conducted activity" are excepted from the rule against hearsay and admissible at trial if they are (1) made at or near the time by someone with knowledge; (2) kept in the course of a regularly conducted activity; (3) made as a regular practice; (4) a qualified witness testifies to these criteria; and (5) the opponent does not show the records lack indicia of trustworthiness. Ariz. R. Evid. 803(6). To lay sufficient foundation under this exception, the testifying witness need not have personal knowledge of the creation of the records. *State v. Parker*, 231

Ariz. 391, 401–02, ¶ 33 (2013). Evidence may be admitted under the business records exception if the witness is subjected to meaningful cross-examination "concerning the methods of preparation, the qualifications of the preparer, and other relevant matters." *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 360–61 (App. 1985).

**¶16** During trial, the State informed the superior court of its intent to elicit testimony from the investigator regarding the date Meriwether received his knee brace. Meriwether objected, arguing the evidence constituted irrelevant hearsay and would draw the jury's attention to the length of his term of imprisonment. The court disagreed, noting the evidence would be relevant to demonstrate knowledge. The court, however, stated that it would determine whether the evidence constituted hearsay as testimony unfolded. The investigator testified that he reviewed prison database records to confirm that Meriwether received an authorized knee brace. He testified that the DOC maintains the prison database, which contains information about all inmates and tracks when an inmate has been approved for the use of any medical equipment.

**¶17** At a bench conference, Meriwether maintained his objection, arguing the State had not shown that information from the prison database fell within the business records exception. Agreeing with Meriwether, the superior court allowed the State to lay additional foundation outside the jury's presence. The investigator confirmed that (1) he had access to prison database records and printed out information from that database "all the time"; (2) he printed out information about Meriwether's knee brace as part of his standard investigation process; (3) prison database records are made and kept as a regular practice for the DOC; (4) only authorized personnel, including medical and legal personnel, can update or edit prison database records; (5) the prison database follows a security protocol and requires special authorization; and (6) that, although he did not have personal knowledge, he believed the records were updated as soon as a relevant "event" occurred.

**¶18** Based on this testimony, the superior court found that information from the prison database fell within the business records exception. The court admitted the evidence only to allow the investigator to establish the length of time Meriwether possessed the knee brace. The court did not allow the printout to be admitted into evidence as an exhibit for the jury's use during deliberations. The investigator then testified that Meriwether received the knee brace in December 2019**.** He used a printout of the prison database records to refresh his recollection of the date during his testimony. In cross-examination and closing remarks, Meriwether

6

criticized the investigator's lack of personal knowledge regarding the prison database records, his failure to conduct any follow-up with medical personnel to confirm the date the brace was issued, and the general "careless laissez-faire" nature of the investigation.

¶19 The investigator's testimony as outlined above satisfied the foundation requirements of the business records exception. *See* Ariz. R. Evid. 803(6). On this record, the superior court had a reasonable basis for admitting the evidence under the hearsay exception. At its core, the business records exception is based on the belief that "businesses normally require authentic, truthful statements to function." *State v. Griffith*, 247 Ariz. 361, 364, ¶ 10 (App. 2019). Here, the prison relies on the accuracy of prison database records to keep track of inmates, monitor the use of medical equipment, and provide reliable data for investigators. The records were sufficiently reliable, and the court acted within its discretion in allowing limited use of the evidence at trial.

¶20 Even if the evidence was improperly admitted under the business exception to the hearsay rules, the error would be harmless. *State v. Hoskins*, 199 Ariz. 127, 142–43 (2000) ("We will not reverse a conviction based on the erroneous admission of evidence without a 'reasonable probability' that the verdict would have been different had the evidence not been admitted." (citation omitted)). Here, the limited evidence admitted through this record simply established when Meriwether was issued his knee brace. Neither the printout of the database information, nor any additional information contained therein, was offered or entered into evidence for the jury's use in deliberations. The date Meriwether received a knee brace had little bearing on the issues before the jury as it was undisputed that he was in fact issued the brace some time prior to the incident. The overwhelming evidence supports the jury's verdict and any error in the admission of testimony regarding the date the knee brace was issued is harmless.

### III. Jury Instruction on the Exception Clause

¶21 Meriwether contends that the superior court erred by failing to sua sponte instruct the jury on the exception clause contained in the promoting prison contraband statute, A.R.S. § 13-2505. He claims the exception clause constitutes an element of a promoting prison contraband offense and must be proven to the jury. Under A.R.S. § 13-2505(A)(3), a person commits promoting prison contraband by "knowingly making, obtaining or possessing contraband while being confined in a correctional facility." As an exception to this provision, the statute provides that A.R.S.

§ 13-2505 "does not apply to . . . [a] prisoner who possesses or carries any tool, instrument or implement used by him at the direction or with the permission of prison officials." A.R.S. § 13-2505(D)(1). Because Meriwether neither requested nor objected to the omission of the instruction at trial, we review only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018).

**¶22** An exception to a criminal statute is not an element of the offense that the State must prove. *State v. Kelly*, 210 Ariz. 460, 463, ¶ 11 (App. 2005). Because the State is not required to negate a statutory exception, the superior court did not err in failing to instruct the jury on the exception clause listed in A.R.S. § 13-2505(D)(1). *See State v. Jung*, 19 Ariz. App. 257, 262 (1973). Moreover, Meriwether did not notice the exception clause as a defense, did not request an exception clause instruction, and objected to prison database records confirming his authorized use of a knee brace. His defense focused heavily on the alleged "carelessness" of the investigation and the credibility of the State's witnesses. To the extent the exception clause can be asserted as a defense, Meriwether did not raise the defense at trial, and the court was not obligated to give the jury instruction sua sponte. *See State v. Simpson*, 217 Ariz. 326, 330, ¶ 23 (App. 2007).

**¶23** Finally, in the alternative, Meriwether argues that the superior court should have granted his Rule 20 motion based on the exception clause. *See* Ariz. R. Crim. P. 20(a)(1). In evaluating the court's denial of a Rule 20 motion, we test the evidence "against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). The exception clause does not constitute an element of an offense under A.R.S. § 13-2505(A)(3), and the court was not required to consider the clause in making its Rule 20 determination.

**CONCLUSION**

**¶24**        For the foregoing reasons, we affirm Meriwether's conviction and resulting sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AA